IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

ROBERT HUSTON,                          :

        Plaintiff,

    v.                                :

U.G.N., INC.,

        Defendant.                  :

Case No. 3:18-cv-62

JUDGE WALTER H. RICE

---

DECISION AND ENTRY SUSTAINING DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT (DOC. #19); JUDGMENT IS TO ENTER IN
FAVOR OF DEFENDANT AND AGAINST PLAINTIFF; TERMINATION
ENTRY

---

Plaintiff, Robert Huston ("Plaintiff" or "Huston"), a former employee of

Defendant, U.G.N., Inc. ("Defendant" or "UGN"), has filed an Amended Complaint

alleging that Defendant unlawfully retaliated against him and ultimately

terminated him because he opposed age discrimination at UGN. Doc. #13.  Count

One alleges a federal claim, retaliation in violation of the Age Discrimination in

Employment Act, 29 U.S.C. §621 et seq. ("ADEA").  Count Two and Count Three

allege state law claims, retaliation in violation of the Ohio Fair Employment

Practices Act, § § 4112.02(A) and 4112.99 of the Ohio Revised Code, and wrongful

discharge in violation of public policy, respectively. *Id.*, PAGEID##56 and 57.  UGN

has filed a motion for summary judgment, Doc. #19, seeking dismissal of all three

counts in the Amended Complaint.  Huston has filed a response in opposition, Doc. #27, and Defendant has filed a Reply. Doc. #28.

UGN's Reply also objects, pursuant to Fed. R. Civ. P. 56(c)(2), to evidence cited by Huston in his memorandum opposing summary judgment, asserting that a portion of a declaration shows a lack of personal knowledge and that certain deposition testimony contains inadmissible hearsay.  Doc. #28, PAGEID##951-953.

Huston has filed no response to Defendant's objections.

Because any decision on Defendant's objections will affect the record to be considered by the Court in ruling on the Motion for Summary Judgment, these objections will be decided prior to the summary judgment motion. *Brainard v. Am. Skandia Life Assurance Corp.*, 432 F.3d 655, 667 (6th Cir. 2005) ("Generally, a district court should dispose of motions that affect the record on summary judgment before ruling on the parties' summary judgment motion.").

## I.   Objections

UGN's first objection is to Paragraph 5 of the Declaration of Caryl Marvin, Doc. #27-2, PAGEID#923.  Defendant contends that the statements in this paragraph are not "based on personal knowledge," Doc. #28, PAGEID#951, and are "also inadmissible on the basis that it constitutes hearsay." *Id*.  UGN does not, however, further explain its hearsay objection. UGN's second objection relates to portions of Plaintiff's deposition testimony that are cited in his response to UGN's motion for summary judgment. Doc. #27, PAGEID##904, 908 and 911. UGN

2

asserts that this deposition testimony likewise contains inadmissible hearsay, because Huston repeats statements made to him by his supervisor, Paul Deckard, as well as statements that Deckard said were made to him by Chris Hicks, the Plant Manager of the Monroe facility. Doc. #13, PAGEID#53.

### a. Declaration of Caryl Marvin (Doc. #27-2)

Rule 56(c)(4) requires that "[a]n affidavit or declaration used to support or oppose a motion" for summary judgment "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). As such, an affidavit must lay a foundation as to why the affiant is competent to testify to the matters stated therein. *Loadman Group, L.L.C. v. Banco Popular North America*, No. 4:10 cv 1759LIO, 2013 WL 1154528, *3 (N.D. Ohio March 19, 2013) citing *Lewis v. Horace Mann Ins. Co.*, 410 F.Supp.2d 640, 647 (N.D. Ohio 2005). Without a proper foundation, the affidavit may be disregarded. *Id.* Moreover, hearsay in an affidavit, absent an exception, cannot be considered on a motion for summary judgment. *Bluegrass Dutch Trust Morehead, LLC v. Rowan County Fiscal Court*, 734 Fed. Appx 322, 327 (6th Cir. 2018), citing *Daily Press, Inc. v United Press Int'l*, 412 F.2d 126, 133 (6th Cir. 1969); see also *Wiley v. United States*, 20 F.3d 222 (6th Cir. 1994). If hearsay exists in declarations utilized in summary judgment motions, the proponent, in this case Huston, has the burden of finding the exception that permits the hearsay to come into evidence. *United*

*States v. Arnold,* 486 F.3d 177, 206 (6th Cir.2007) (quoting *United States v.*

*Kendrick*, 853 F.2d 492, 496 n. 3 (6th Cir.1988)).

UGN first objects to paragraph 5 of the Marvin declaration because it states

that it is based on her "belief." Doc. #28, PAGEID#951. This paragraph reads as

follows:

> I believe Mr. Hicks decided to terminate Mr. Huston's employment
> and directed Dennis Schweller to do that. I came to believe this very
> soon after Mr. Hicks returned to Monroe to replace Mr. Blagg. My
> belief is based on my interactions with Mr. Hicks although I cannot
> quote his specific words, what he said then.

Doc. No. 27-2, PAGEID#923.

UGN contends that this paragraph is inadmissible because "[A] statement

based on 'belief' does not equate to the statement being based on personal

knowledge." (citations omitted.) *Id.* The "belief" of the declarant, as stated in

Paragraph five of the declaration of Caryl Marvin, is, however, allegedly "based

on" her "interactions with Hicks." Doc. #27-2, PAGEID#923. As such, a foundation

has been laid showing that the declarant is competent to testify to the matters

stated. *Ondo v. City of Cleveland*, 795 F.3d 597 (6th Cir. 2015)(district court has

discretion to determine whether it can differentiate between knowledge and belief

for each averment in affidavits and if the court can distinguish between the two,

then the affiant's stylistic error should be excused and the parts based solely upon

personal knowledge should be admitted while the parts based upon belief should

be stricken). Moreover, UGN's assertion that this paragraph of the declaration

contains inadmissible hearsay is not well-taken. No out of court statement is

contained in this paragraph. Even if it were, Fed. R. Evid. 801(d)(2)(D) would arguably allow such a statement, given that Mr. Hicks was the Plant Manager for UGN.[1]  Accordingly, UGN's objections based on lack of personal knowledge and hearsay are overruled.

### b. Inadmissible Hearsay in Plaintiff's Deposition

UGN also objects to testimony from Huston's deposition, Doc. #23, cited by Huston in his response to UGN's motion for summary judgment. Doc. #28, PAGEID#952; Doc. # 27, PAGEID##904, 908 and 911. The relevant portion of Huston's response that is objected to by UGN reads as follows:

> Deckard asked Plaintiff if he still had an attorney and then told Plaintiff he had just met with Hicks and Hicks had expressed anger toward him because he had not already fired Plaintiff, and had told him to remove himself from Plaintiff's performance evaluation process and he (Hicks) and Schweller would take care of it. (Pl. 93 l.18 – 94 l.24, 147 l.7 – 148 l.4, Doc. 23 at PageID 463-464, 518-519).  Doc. #27, PAGEID#904.

> Deckard told Plaintiff the termination of his employment was imminent regardless of his performance and regardless of whether he gave Schweller the sheets. *Id.*  Doc. #27, PAGEID#904[2]

> According to Deckard . . . Hicks made the decision to terminate Plaintiff and instructed Schweller to implement that decision. (Pl. 93 l.18 – 94 l.11, 147 l.7 – 148 l.4, Doc. 23 at PageID 464-465, 518-519) (Marvin Dec. 5). *Id.* at PAGEID#908.

---

[1]Rule 801(d) Statements That Are Not Hearsay. A statement that meets the following conditions is not hearsay: . . . (2) An Opposing Party's Statement.  The statement is offered against an opposing party and: . . .(D)was made by the party's agent or employee on a matter within the scope of that relationship and while it existed; . . .

[2]Dennis Schweller ("Schweller), was the Production Manager and Plaintiff's direct supervisor. Schweller reported to Paul Deckard, the Manufacturing Manager who, in turn, reported to Chris Hicks ("Hicks"), the Director of Operations and later the Plant Manager of the Monroe plant. Doc. #19-3, p.1; Doc. #23, pp. 148-149; Doc. #19-1, p. 4.

According to Deckard, who was Schweller's supervisor and Hicks' subordinate, it did not matter whether Plaintiff complied with Schweller's 'request' because Hicks had already decided to terminate Plaintiff with Schweller's assistance. (Marvin Dec. 5) *Id.* at PAGEID#911.

UGN's objection asserts that the above-referenced testimony is inadmissible hearsay and "double hearsay." Doc. #28, PAGEID#952.

As the proponent of this testimony, Huston must establish that the alleged hearsay and double hearsay from his deposition, and cited in his response to Defendant's Motion for Summary Judgment, is admissible. *See*, Fed. R. Civ. P. 56 advisory committee's note (2010 Amendments) ("The burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated."). With respect to double hearsay, Fed. R. Evid. 805 requires that each separate statement must either be excluded from the hearsay definition or fall within a hearsay exception. *See United States v. Gibson*, 409 F.3d 325, 337 (6th Cir. 2005). Plaintiff's has not responded to UGN's objection, although he does state in his response to UGN's summary judgment motion that "Deckard was Schweller's supervisor and Hicks' subordinate." Doc. #27, PAGEID#911. UGN argues, however, that Rule 801(d)(2)(D)[3] does not apply to these statements since there is no evidence that Deckard, an employee of UGN, was acting within the scope of his employment when he allegedly made the statements to Plaintiff. Doc. #28, PAGEID#953.

---

[3] Rule 801(d)(2)(D), *supra*, note 1.

UGN's argument, however, ignores the declaration of Chris Hicks, the Plant Manager, attached as an exhibit to its motion for summary judgment. In his declaration, UGN's Plant Manager states:

> 22. Paul Deckard, the Manufacturing Manager at the time, and I met with Huston on December 30, 2015, to discuss his lack of leadership.

> 23. In that meeting, Deckard and I informed Huston that he was not being active enough leading Team Members and problem solving.

> 24. Deckard and I further explained that Huston was behaving more like a rank-and file Team Member, rather than a Production Coordinator.

Doc. #19-1, PAGEID#279.

Based on the declaration of Chris Hicks, the "scope of employment" requirement of Rule 801(d)(2)(D) is satisfied.  Deckard, as the Manufacturing Manager, reported to Hicks and was a part of Plaintiff's December 30, 2015, review.  Moreover, there is no requirement that Deckard be directly involved in the termination process itself. *Carter v. Univ. of Toledo*, 349 F.3d 269, 275-276 (6th Cir.2003) (hearsay testimony of the vice provost, who was not involved in the decision to let employee's teaching contract lapse, was permitted under Rule 801(d)(2)(D) because his statements were on a matter within the scope of his employment and there is no requirement that a declarant be directly involved in the adverse employment action). *Id.* at 275–76.  Deckard's alleged statements to Plaintiff that his termination was inevitable, regardless of whether he gave his immediate supervisor, Schweller, "sheets" to complete an assignment, is offered to show that his termination was unrelated to Plaintiff's alleged failure to comply

7

with Schweller's request.  Because Deckard was the Production Manager and previously involved in a review of Plaintiff, the statements from Deckard to Plaintiff are admissible under Fed. R. Evid. 801(d)(2)(D).

As to the statements Chris Hicks, the Plant Manager, made to Deckard concerning Plaintiff's termination and that Deckard later told to Plaintiff, these statements are also admissible.  Hicks's statements to Deckard are admissible pursuant to Fed. R. Evid. Rule 801(d)(2)(C)[4] since as the Plant Manager, he is authorized to make such a statement regarding Plaintiff and, for the reasons previously stated under Rule 801(d)(2)(D), Deckard is authorized to tell Plaintiff of his impending termination.

Accordingly, UGN's hearsay objections to Plaintiff's deposition testimony concerning conversations with Deckard that occurred following Huston's meeting with Schweller on March 10, 2017, and the statements that Hicks allegedly made to Deckard and Deckard told to Plaintiff, are overruled.


II.   **Background Facts**

UGN is a manufacturer of acoustic, interior trim and thermal management products for the automotive industry. Doc. #19-1, PAGEID#277. Huston was hired by UGN as a Production Coordinator in May 2015, at their new facility in Monroe,

---

[4] Rule 801(d) Statements That Are Not Hearsay. A statement that meets the following conditions is not hearsay: . . . (2) An Opposing Party's Statement.  The statement is offered against an opposing party and: . . .(C) was made by a person whom the party authorized to make a statement on the subject.

Ohio.  Doc. #23, PAGEID##383 and 389.  At the time Plaintiff was hired, the UGN

plant was not yet in production. *Id.*, PAGEID#382. Production at the Monroe plant,

according to Plaintiff, began sometime before September 2015. *Id.*, PAGEID#387.

The UGN plant at Monroe is divided into two production operations: carpet

production and engine side molding ("ESM"). Doc. #19-1, PAGEID#277.  Although

Huston was the only Production Coordinator when the plant first opened, he later

became the Production Coordinator in carpet, which is a supervisory position as

well as one overseeing employees. Doc. #23, pp.19 and 21. The other Production

Coordinator, Dan Strange ("Strange"), was hired for ESM.  *Id.*, PAGEID#491.  ESM

and carpet, according to Plaintiff, were two very different products with different

production issues as it related to machinery. *Id.*, PAGEID##386 and 491.   Huston

reported to Dennis Schweller ("Schweller"), the Production Manager. *Id.*,

PAGEID#384.  Schweller, in turn, reported to Paul Deckard ("Deckard"), the

Manufacturing Manager, who reported to Chris Hicks ("Hicks"). Doc. 19-3,

PAGEID#304; Doc. #23, PAGEID##519-20.  In March 2016 Hicks was the Director of

Operations of UGN's Monroe facility; however, in June 2017 he became Plant

Manager for the Monroe facility. Doc. #19-1, PAGEID##390 and 391.

On December 30, 2015, there was a meeting at UGN that included Plaintiff,

Hicks and Deckard. Doc. #23, PAGEID#398.  Plaintiff testified that the conversation

at this meeting was not pleasant for him and that the meeting concerned his

performance.  He conceded that based on what was discussed at the meeting, it

was possible that he was not meeting expectations.  *Id.*, PAGEID##397-399 and

406.  Huston testified that during this December 30 meeting, Hicks stated that Plaintiff was not meeting production numbers, that Hicks would not have hired Huston as a team leader or even a team member, that he spent too much time in the office doing paperwork and that he should "stay over" and "review standard work." *Id.*, PAGEID##401-402.   Huston, who was 46, testified that Hicks committed "age discrimination and retaliation" at this December 30 meeting. Doc. #13, PAGEID#53.  According to Plaintiff, the age discrimination and retaliation occurred because Hicks did not have a meeting with Strange, the other Production Manager who was younger than Plaintiff, and because, based on his performance, Hicks said "he did not see" how Huston could have had 20 years of experience in the industry.  Hicks also allegedly said that, although he would send Huston to Somerset, Kentucky, for training, Hicks did not think it would help. Doc. #23, PAGEID#421.  Plaintiff, however, testified that that did not state at this December 30 meeting to either Deckard or Hicks that he believed he was being discriminated against because of his age. *Id.*, PAGEID#406.

On January 21, 2016, there was a second meeting that Huston attended with Hicks and Stacy Ledford. *Id.*, PAGEID#397. During this meeting, Plaintiff was told that he needed to hold his team members accountable.  He also learned he would not be receiving a bonus for 2015. *Id.*, #23, PAGEID##435 and 461.

Prior to January 21, 2016, Plaintiff had never complained of any kind of discrimination to anyone at UGN, filed a complaint or hired an attorney. *Id.*, PAGEID##436-37.

10

An hour after the January 21, 2016, meeting, Plaintiff testified that he told Deckard that what Hicks was doing "isn't right and I considered it harassment and age discrimination." *Id.*, PAGEID##431 and 433-34.

After he learned he would not be receiving a year-end bonus, Plaintiff, on January 25, 2016, contacted an attorney. Huston did not, however, tell anyone at UGN that he had done so. Doc. #23, PAGEID##455-56.

On January 27, 2016, Huston went to the human resources office at the Monroe Plant to have a conversation with Brett Bechinske ("Bechinske"), a UGN human resource ("H.R.") representative. *Id.*, PAGEID##421-22.  During this meeting with the HR representative, Plaintiff complained about harassment, did not remember if he said it was "age discrimination," but testified that he told Bechinske why he thought he was being harassed. In addition to telling Bechinske what Hicks had said to him on December 30, 2015, Plaintiff also gave him a document that listed statements allegedly made at the meeting. The document given to Bechinske stated, in part, that Hicks

> told me that he wished he was present at my hiring process because he wouldn't have hired me. Because I have been at my last job for 20 years, he said that I would be too hard to change.  He said that he does not hire anyone who has been at a company for that long."

Doc. #23-11, PAGEID#559.

Plaintiff agreed that Hicks could have meant that Huston had picked up habits that UGN did not appreciate; however, Plaintiff understood it to mean that

"it was too late to train me or teach me." *Id.*, PAGEID#427.[5] He told the H.R. representative "what Chris Hicks had said about the 20 years and how I wouldn't learn and how it wouldn't do no good." PAGEID##423.

On February 11, 2016, Bechniske, Schweller and Deckard met with Houston to discuss Huston's concerns and to provide him with specific examples of his poor performance. *Id.*, PAGEID##440-442. Huston was told again that he would not be getting a bonus and would also not be getting a raise. *Id.* Plaintiff testified that he did not remember mentioning issues related to his age at this February 11 meeting. *Id.*, PAGEID#442.

On February 18, 2016, UGN received a letter from Huston's attorney, advising that he was investigating UGN for claims of age discrimination and retaliation. Doc. #23-1, PAGEID##566-67. The attorney's letter, sent via email, also stated that Plaintiff believed that he had been and is continuing to be discriminated against because of his age and is also being retaliated against for complaining of age discrimination. *Id.* UGN sent a response on February 26, 2016, and on March 17, 2016, Plaintiff's attorney sent a letter via email alleging retaliation. *Id.*, PAGEID#571.

---

[5] Huston filed a declaration, Doc. #27-1, in which he stated that "[I]n order to make clear to Bechinske I believed Hicks was discriminating against me because of my age, I used various forms of the word discriminate, specifically 'discrimination' and 'discriminating' and I likened Hicks training comments to the adage 'an old dog can't learn new tricks.' I characterized Hicks' attitude toward me as 'Like I'm old and I can't learn nothing new.'" *Id.*, PAGEID##914 and 915.

On April 8, 2016, Huston signed a Performance Review for 2015 completed by Schweller.  Doc. #23, PAGEID##478-79.  Doc. 23-1, PAGEID##574-82.  The review was largely negative and Huston believed that it was retaliation because none of it was true. Doc. #23, PAGEID##470 and 478.  Plaintiff also testified that he was put on a Performance Improvement Plan ("PIP") the same day as his review. *Id.*, PAGEID#479. The PIP stated that because of Huston's "current unsatisfactory performance" he could be terminated if his performance did not improve within the next 60 calendar days. *Id.*, PAGEID#481. Plaintiff testified that the examples given to him at the meeting regarding his poor performance were false. According to Huston, the PIP was "made up" and "bogus" and it was given to him because UGN was retaliating against him for contacting a lawyer. *Id*, PAGEID##481-82. There was no discussion by Plaintiff at this meeting of age discrimination. *Id.*, PAGEID#482.

In early May 2016, and in accordance with the PIP, Plaintiff attended a week of training in Somerset, Kentucky. *Id.*, PAGEID#495.  Following this training, Huston stated that he recalled no "overt acts of retaliation" through the end of the year. *Id.*, PAGEID#484.

On January 31, 2017, however, Plaintiff met with Schweller and Caryl Marvin of HR regarding a January 26, 2017, cleaning issue which resulted in the production line being shut down at the start of the next shift.  A second issue that occurred on January 28, 2017, was also discussed and involved team members not following their assigned cleaning process. *Id.*, PAGEID##497, 499-501.  Plaintiff

13

denied responsibility for the January 28 and 31 issues.  Huston also testified that

he did not complain at this meeting of age discrimination. *Id.*, PAGEID#506.

Huston admitted that he was reminded by Schweller at the January 31, 2017,

meeting that "this poor performance is tied to [my] PIP." *Id.*, PAGEID#505.

On March 10, 2017, Huston was given two "corrective notices" by

Schweller.  One notice was because Huston failed to get volunteers to work a

Saturday shift and the second notice was for his failure to show up to work on

time for a Saturday shift. *Id.*, PAGEID##506 and 509. Huston testified that the claim

of alleged failure to get volunteers for Saturday work was retaliation, since he had

explained to Schweller that he attempted, unsuccessfully, as early as 6:30 a.m. the

day of the request, to get Saturday volunteers. *Id.*, PAGEID##506 and 509-11.

Huston refused to sign this corrective notice. *Id.*, PAGEID#154. Plaintiff did,

however, sign the corrective notice concerning coming in to work late on a

Saturday. He testified, however, that he disagreed with it and believed that he was

being held to different standards since the younger Strange did not come in on

Saturdays under similar circumstances. *Id.*, PAGEID##514-15. There was no

discussion at this meeting of age discrimination or whether Plaintiff still had an

attorney. *Id.*, PAGEID#521.

Plaintiff also testified that at the March 10, 2017, meeting he was told by

Schweller that there was an audit and Houston needed to collect check sheets to

verify that everything was clean and getting completed. *Id.*, PAGEID#517. Huston

14

testified that he told Schweller that because of a new team member, he did not think that every sheet had been turned in.

Shortly after this meeting regarding the corrective notices and upcoming audit, Huston met with Deckard. According to Plaintiff, Deckard asked Plaintiff if he still had an attorney and then told Plaintiff that he, Deckard, had just met with Hicks, that Hicks was angry at Deckard because he had not already fired Plaintiff and that Hicks told Deckard that Plaintiff's performance evaluation would be handled by Hicks and Schweller. *Id.*, PAGEID##464-65. According to Plaintiff, Deckard said that it did not matter whether Plaintiff complied with Schweller's "request," because Hicks had already decided to terminate Plaintiff and that the termination of his employment was imminent, regardless of his performance and whether he gave Schweller the sheets. *Id.* Following Plaintiff's meeting with Deckard, Plaintiff testified that he intentionally did not complete Schweller's task. *Id.*, PAGEID##519-20.

Huston was discharged on March 14, 2017. *Id.*, PAGEID##520-21. He remembers that the audit sheets were discussed at his termination meeting, and he told Schweller that that he did not have them. *Id.*

In response to his discharge, on May 23, 2017, Huston filed a complaint of discrimination alleging retaliation with the Equal Employment Opportunity Commission. On December 6, 2017, the EEOC issued and mailed to Plaintiff a

notice of dismissal of his complaint and notice of right to sue. Doc. #13, PAGEID#56.[6]

## III. Summary Judgment Standard

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.v. Catrett*, 477 U.S. 317, 322 (1986). The moving party always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323; *see also Boretti v. Wiscomb*, 930 F.2d 1150, 1156 (6th Cir. 1991).

"Once the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial." *Talley v. Bravo Pitino Rest., Ltd.*, 61 F.3d 1241, 1245 (6th Cir. 1995); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical

---

[6]Although Plaintiff alleges age discrimination in his Amended Complaint and deposition testimony, his Amended Complaint contains only claims of retaliation under the ADEA (Count I), Ohio Rev. Code § 4112.99 (Count II) and wrongful discharge in violation of public policy for consulting an attorney (Count III).

doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rule 56 "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324. "The plaintiff must present more than a scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff." *Michigan Prot. & Advocacy Serv., Inc. v. Babin*, 18 F.3d 337, 341 (6th Cir. 1994).

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. In determining whether a genuine dispute of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in favor of that party. *Id.* at 255. If the parties present conflicting evidence, a court may not decide which evidence to believe. Credibility determinations must be left to the fact-finder. 10A Wright, Miller & Kane, *Federal Practice and Procedure* Civil 3d § 2726 (1998).

In determining whether a genuine dispute of material fact exists, a court need only consider the materials cited by the parties. Fed. R. Civ. P. 56(c)(3). "A district court is not . . . obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal*

17

*Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989), *cert. denied*, 494 U.S. 1091 (1990).  If it so chooses, however, the Court may also consider other materials in the record.  Fed. R. Civ. P. 56(c)(3).

## IV.   Legal Analysis

### A.  Retaliation Claims Under the ADEA and Ohio Law (Counts I and II)

Because both the ADEA and Ohio law prohibit employers from retaliating against an employee for opposing or reporting discrimination, retaliation claims under the ADEA and Ohio law may be analyzed together. 29 U.S.C. § 623(d); Ohio Rev. Code § 4112.02(I);[7] *Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 469 (6th Cir. 2002) ("In analyzing claims arising under Ohio Rev Code § 4112, Ohio courts have adopted the framework established in federal case law concerning Title VII and the Age Discrimination in Employment [A]ct").  In this case, because Huston does not present any direct evidence of a retaliation claim under the ADEA or Ohio law, the Court will review Plaintiff's claims based on circumstantial evidence of retaliation.

In order to establish a *prima facie* case of retaliation, Plaintiff must present evidence that (1) he engaged in a protected activity; (2) UGN was aware that he

---

[7] "It shall be an unlawful discriminatory practice: ... (I) For any person to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section or because that person has made a charge, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing under sections 4112.01 to 4112.07 of the Revised Code."

had engaged in such activity; (3) UGN took an adverse employment action against him; and (4) there is a causal connection between the protected activity and UGN's adverse action. "The burden of establishing a *prima facie* case in a retaliation action is not onerous, but one easily met." *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000).

   Assuming that a *prima facie* case of retaliation is established by Huston, the burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), is utilized and "the burden of production of evidence shifts to the employer to articulate some legitimate, non-discriminatory reason for its actions. If the defendant satisfies its burden of production, the burden shifts back" to Huston to prove that UGN's proffered explanation is merely a pretext for Plaintiff's termination. *Weigel v. Baptist Hosp. of East Tennessee*, 302 F. 3d 367, 381(6th Cir. 2002) (summary judgment to employer affirmed since although nurse/employee established *prima facie* circumstantial case of retaliation under the ADEA, hospital/employer offered legitimate, non-discriminatory reasons and nurse/employee was unable to show pretext).

   UGN's does not contest that Huston engaged in protected activity, that UGN was aware of it and that an adverse employment action occurred.[8]  Instead, UGN argues, based upon the undisputed facts and as a matter of law, that no *prima*

---

[8] UGN asserts that Schweller was unaware of Plaintiff's age discrimination complaints and the letter sent from his attorney on March 14, 2016, Doc. #19, PAGEID#263.  For purposes of this motion, however, the Court assumes that because Schweller's supervisors, Deckard and Hicks were aware, that this element of retaliation is satisfied.

*facie* case of retaliation exists because Plaintiff cannot establish a causal connection. "Title VII retaliation claims 'must be proved according to traditional principles of but-for causation,' which 'requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer.'" *Laster v. City of Kalamazoo*, 746 F.3d 714, 730 (6th Cir. 2014) (quoting *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013)). As such, Huston is required to "proffer evidence sufficient to raise the inference that [his] protected activity was the likely reason for the adverse action." *E.E.O.C. v. Avery Dennison Corp.*, 104 F.3d 858, 861 (6th Cir. 1997) (internal quotation marks and citations omitted)*.*

UGN contends that no causal connection exists due to (1) the one-year period between the alleged protected activity and Plaintiff's termination; (2) documented problems regarding Plaintiff's performance prior to his protected activity; and (3) Plaintiff's admission that he intentionally did not perform a task requested by his direct supervisor. UGN further argues that even assuming a *prima facie* case of retaliation exists, and applying the burden-shifting framework of *McDonnell Douglas*, UGN's reasons for Plaintiff's termination were legitimate and non-retaliatory, without evidence that it was pretextual.

### 1. Causal Connection

In deciding UGN's motion for summary judgment, the Court must determine whether a genuine issue of a material fact, a dispute, stands in the way of resolving Huston's case as a matter of law, while giving him the benefit of

20

reasonable inferences from the record as the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 255, (1986). Construing the facts in the light most favorable to Huston, the record indicates that Huston first complained to UGN of age discrimination on January 21, 2016, when Plaintiff told Deckard that what Hicks was doing was not right and that it was harassment and age discrimination. Following the January 21, 2016, informal complaint made by Huston to Deckard, UGN received an email from Plaintiff's attorney on February 18, 2016, alleging age discrimination and retaliation. A final letter alleging retaliation from Huston's attorney to UGN was sent on March 17, 2016. From March 17, 2016, through Plaintiff's discharge on March 14, 2017, however, there is no evidence of any further protected activity.

Plaintiff argues that temporal proximity is not a sufficient condition to prove but-for causation. However, with approximately one year from the protected activity and Huston's discharge, "[T]his timing does not 'raise the inference that [the] protected activity was the likely reason for the adverse action.'" *Lindsay v. Yates*, 578 F.3d 407, 418 (6th Cir.2009), as cited in *Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 288 (6th Cir. 2012) (summary judgment dismissing plaintiff's ADEA retaliation claim affirmed, finding that there was no causal connection between college employee's protected activity and employee's termination where employee's last complaint occurred more than a year before her termination).

UGN next argues that the timeline does not support a causal connection between any protected activity and Huston's discharge, since complaints

concerning his performance existed prior to any protected activity.  Specifically, on December 30, 2015, Huston admitted, based on what was discussed at the meeting, that it was possible that he "was not meeting expectations" and that he was told he was also not meeting production numbers.  At a meeting on January 21, 2016, Plaintiff's leadership skills as a Production Coordinator were criticized by Hicks and he was told he would not receive a bonus for 2015.  Plaintiff received a review and PIP in April of 2016, and was sent to training in Somerset, Kentucky, for a week in May of 2016.   From May 2016 through the end of the year, there were no complaints concerning his performance until meetings held on January 31, 2017, and March 10, 2017.  Plaintiff disputes that he had any responsibility for the issues discussed in the January 31 meeting and also contends that the two corrective notices given to him on March 10, 2017, were unjustified.

UGN's final argument is that no causal connection exists because Huston admitted in his deposition that he intentionally did not collect sheets for the audit as Schweller had asked him to do at the end of the March 10, 2017, meeting.  UGN asserts that Huston actions constitute an "intervening legitimate reason" for termination.  *Wasek v. Arrow Energy Services, Inc*, 682 F.3d 463 (6th Cir. 2012) (employee's decision to leave the worksite due to sexual harassment after the last complaint to his supervisor was an intervening event that gave the employer a legitimate reason to discipline the employee and that reason "dispels an inference of retaliation based on temporal proximity"). Plaintiff, however, testified in his deposition that Deckard told him, shortly after the March 10 meeting with

Schweller, that Hicks had already decided on Huston's termination and that it did not matter if Plaintiff collected sheets for the audit to give to Schweller, since at most it would only "buy me a few days or time but my days there are done per Chris Hicks." Doc. #23, PAGEID#518.  As a result of this information from Deckard, Plaintiff testified that he intentionally did not complete the assigned task.

Even construing all reasonable inferences in favor of Huston and concluding that Hicks and Schweller had decided on or before March 10, 2016, that Plaintiff would be terminated, there is no dispute that complaints concerning Plaintiff's performance preceded any of his claims of age discrimination or retaliation.  Plaintiff admitted that he received negative comments about performance at the December 30, 2015, meeting from Hicks and Deckard and that on January 21, 2016, Hicks told Plaintiff that he lacked leadership skills and would not be receiving a 2015 bonus.  Shortly after this meeting, Plaintiff stated to Deckard that he believed he was the victim of age discrimination.  Although Plaintiff's attorney sent a letter via email to UGN on February 18, 2016, and later on March 17, 2016, alleging age discrimination and retaliation, Plaintiff was not discharged until March 14, 2017, nearly a year later.

The Court has reviewed the circumstantial evidence presented and has construed this evidence most strongly in Huston's favor.  Based upon this review and construction, there is no genuine issue of a material fact, no dispute, that a causal connection between Plaintiff's complaints of age discrimination has not been established.

### 2. Legitimate Non-Retaliatory Basis

UGN asserts that even assuming that a causal connection existed between the protected activity and the adverse action of UGN in terminating Plaintiff nearly a year later, it had legitimate non-retaliatory reasons for termination that were not pretextual.

UGN argues that its legitimate non-retaliatory reasons for termination consisted of Plaintiff's performance issues first discussed on December 30, 2015, and again on January 21, 2016. UGN contends that as a result of his 2015 poor performance review, Plaintiff was put on a PIP in April 2016 and in May sent to Somerset Kentucky for training. Thereafter, UGN claims that the same "lack of leadership" issues and failure to manage team members created new performance issues in January 2017, as well as the two corrective action notices issued on March 10, 2017. UGN argues that even if Deckard told Plaintiff that he would be terminated regardless of whether he collected any sheets for the audit, Plaintiff still intentionally failed to follow a directive from Schweller. Plaintiff's alleged lack of leadership issues identified in January 2017, as well as the two corrective actions/reprimands issued in March of that year, and failure to follow Schweller's instructions to collect sheets for the audit, are, according to UGN, legitimate non-retaliatory reasons for termination. The burden on Defendant at this stage is merely one of production. *Burdine*, 450 U.S. at 253, 101 S.Ct. at 1093. The burden of persuading the trier of fact that UGN intentionally discriminated against him remains with Huston. *Id.*

24

In order to establish that UGN's proffered reasons for termination are a pretext, Huston must show that the reasons (1) had no basis in fact; (2) did not actually motivate the adverse employment action; or (3) were insufficient to motivate the employment action. *McKinley v. Skyline Chili, Inc.*, 534 Fed. Appx. 461 (6th Cir. 2013), citing *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir.1994), overruled on other grounds by *Geiger v. Tower Auto.*, 579 F.3d 614 (6th Cir.2009). The third reason "ordinarily[,] consists of evidence that other employees, particularly employees not in the protected class, were not fired even though they engaged in substantially identical conduct to that which the employer contends motivated its discharge of the plaintiff." *Id.*

Plaintiff, however, is unable to establish a genuine issue of a material fact that UGN's decision to terminate is a pretext for his complaints of age discrimination. There is no dispute that UGN's concerns with Plaintiff's performance predated any allegations of age discrimination since, as Plaintiff testified, his first complaint of age discrimination did not occur until an hour after his January 21, 2016, meeting when Hicks told him he lacked leadership skills and would not receive a bonus. Moreover, although Plaintiff disputed any responsibility for the January 26, 2017, cleaning issue as well as the two corrective notices he received on March 10, 2017, "[T]he ultimate question is whether the employer intentionally discriminated, and proof that 'the employer's proffered reason is unpersuasive, or even obviously contrived, does not necessarily establish that the plaintiff's proffered reason ... is correct.'" *Reeves v.*

*Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147, (2000) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 524, (1993)); *Bender v. Hecht's Dept Stores*, 455 F.3d 612, 627 (6th Cir.)(courts "do not 'act[ ]as a super personnel department, overseeing and second guessing employers' business decisions'"). Accordingly, Huston is required to produce evidence that UGN's reasons for termination were both false and that the real reason was discrimination. *St. Mary's Honor Center v. Hicks*, 509 U.S. at 515-516.

In response, Plaintiff argues that UGN treated him less favorably than Strange, the other Production Coordinator who was younger than he. This different treatment included not disciplining Strange for coming in late on Saturdays, permitting Strange to wear shorts to work, inviting him, but not Plaintiff, to lunches and meetings and failing to discipline Strange for forklift accidents. Plaintiff testified, however, that Strange's ESM production line was different than his due to different products and differences in machinery, that Huston was not involved in communications that occurred between Strange and management and that Plaintiff did not witness the forklift accidents in which Strange allegedly had been involved. Doc. #23, PAGEID##491, 499 and 455.

Although Plaintiff showed that both Strange and he were Production Coordinators, he failed to produce evidence that UGN intentionally discriminated against him or that he and Strange were "similarly situated." *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir.1998). To be similarly situated, "the individuals with whom the plaintiff seeks to compare his/her

26

treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Id.* As such, even assuming that a *prima facie* case of retaliation was established, Plaintiff cannot establish that UGN's proffered legitimate non-retaliatory reasons were, in fact, pretextual.

Accordingly, the Court concludes that there is no genuine issue of a material fact that prevents the granting of UGN's motion for summary judgment as to Huston's claims for unlawful retaliation in violation of the ADEA (Count One) and the Ohio Fair Employment Practices Act, § § 4112.02(A) and 4112.99 (Count Two).

### B. Wrongful Discharge in Violation of Public Policy (Count III)

Plaintiff's third claim is based on wrongful discharge in violation of Ohio public policy, the alleged basis being Huston's consultation with an attorney and his attorney's subsequent communication with UGN alleging age discrimination and retaliation. In determining Ohio law, the Court must first look to final decisions of the Supreme Court of Ohio. *Savedoff v. Access Grp., Inc.*, 524 F.3d 754, 762 (6th Cir.2008).[9]

---

[9] Decisions of Ohio appellate courts are "viewed as persuasive unless it is shown that the state's highest court would decide the issue differently." *Savedoff*, 524 F.3d at 762

Ohio is an at-will state and an employer is permitted to terminate an at-will employment relationship "even if done in gross or reckless disregard of [an] employee's rights." *Painter v. Graley*, 70 Ohio St.3d 377, 382 (1994) (citations and internal quotation marks omitted). The Ohio Supreme Court, however, has created an exception to the at-will doctrine, if the discharge is in violation of public policy. *Greeley v. Miami Valley Maintenance Contractors, Inc.*, 49 Ohio St.3d 228 (1990).

 In order to prove a wrongful discharge claim in violation of public policy, a plaintiff must establish: (1) the existence of a clear public policy manifested in a state or federal constitution, statute or administrative regulation, or in the common law (the "clarity element"); (2) that a dismissal under circumstances similar to the plaintiff's dismissal would jeopardize the public policy (the "jeopardy element"); (3) that the plaintiff's dismissal was motivated by conduct related to the public policy (the "causation element"); and (4) that the employer lacked an overriding legitimate business justification for the dismissal (the "overriding justification element"), *Plona v United Parcel Service, Inc.*, 558 F.3d 478 (6th Cir. 2009), citing *Wiles v. Medina Auto Parts*, 96 Ohio St.3d 240, 242 (2002). "[T]he public policy alleged to have been violated [must be] of equally serious import as the violation of a statute." *Painter*, 70 Ohio at 383. The clarity and jeopardy elements are questions of law to be decided by the court. *Wiles v. Medina Auto Parts*, 96 Ohio St. 3d at 242.

With respect to the element of clarity, there is no dispute "that an employer's discharge of an employee for consulting a lawyer would violate public

policy." *Chapman v. Adia Services., Inc.*, 116 Ohio App. 3d 534, (Hamilton Cty.

1997) (clear public policy violated by employer for terminating an employee for

consulting an attorney for personal injury claim against employer's client) This

public policy, however, applies only to an employer who terminates an employee

"*solely* for consulting an attorney" and only applies to conduct outside the

workplace. *Sharp v. Profitt*, 674 Fed. Appx. 440, 449 (6th Cir. 2016), citing *Boyd v.*

*Winton Hills Med. & Health Ctr., Inc.*, 133 Ohio App.3d 150, 159 (Hamilton Cty.

1999) (emphasis added); *Plona v United Parcel Service*, 2No. 1:06-CV-01144, 2007

WL 509747, at *3 (N.D. Ohio Feb. 13, 2007). Additionally, "Ohio does not force

employers to accept employees injecting attorneys into common workplace

matters." *Sharp* at 674 Fed. Appx. 449.

The only evidence of attorney involvement in this case is when Huston's

lawyer sent an email to UGN on February 18, 2016, and March 17, 2016, alleging

age discrimination and retaliation.   Plaintiff has admitted, however, that he did

not tell anyone at UGN that he had consulted an attorney before these two emails

were sent.  Prior to UGN becoming aware that Huston had consulted an attorney,

he had been counseled on several occasions regarding his job performance.

Accordingly, Plaintiff has produced no evidence that he was terminated solely for

contacting an attorney.  As such, Huston has not established the clarity element of

a wrongful discharge claim in violation of public policy.

Similarly, there is no evidence that Plaintiff has satisfied the jeopardy

element. There are "three steps of jeopardy analysis: (1) determine 'what kind of

conduct is necessary to further the public policy' at issue; (2) decide whether the employee's actual conduct fell within the scope of conduct protected by this policy; and (3) consider whether employees would be discouraged from engaging in similar future conduct by the threat of dismissal." *Himmel v. Ford Motor Co.*, 342 F3d 593, 599 (6th Cir. 2003), citing Henry H. Perritt, Jr., *The Future of Wrongful Dismissal Claims: Where Does Employer Self Interest Lie ?*, 58 U. Cin. L. Rev. 397, 398–99 (1989)). As stated previously, the public policy at issue in this case is the ability of an employee to consult with an attorney outside the workplace concerning the employee's rights. Huston's conduct does not, for the reasons previously stated, fall within the scope of this protected conduct. The jeopardy element has not been satisfied.

As to the two remaining factual elements of a wrongful discharge claim in violation of public policy, causation and overriding legitimate business justification, the Court has previously found that there is no causal connection, given that Huston's performance issues were discussed with him prior to any claims of age discrimination or retaliation. Additionally, although Plaintiff claims that he was being terminated regardless of whether he produced the sheets necessary for the audit, the fact remains that following his PIP in April of 2016, Huston was counseled for two incidents on January 21, 2017, and issued two corrective notices on January 30, 2017. As such, UGN has established a legitimate business justification.

Based upon the above cited reasons, there is no genuine issue of a material fact that Plaintiff has failed to show that he was wrongfully discharged in violation of Ohio public policy due to his consultation with an attorney.

## V.    Conclusion

For the reasons set forth above, Defendant's Motion for Summary Judgment, Doc. #35, is SUSTAINED.

Judgment is to enter in favor of Defendant, UGN, Inc., and against Plaintiff, Robert Huston.

The captioned cause is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.

Date: May 29, 2020                    _____
                                      WALTER H. RICE
                                      UNITED STATES DISTRICT JUDGE